WILLIAM H. FORBES *vs.* FRANK A. MORSE.

October Term, 1896.

Present: Ross, C. J., Rowell, Tyler, Munson, Start and Thompson, JJ.

*Evidence.*

In an action for enticing away the plaintiff's servant, an undated letter from the defendant to the servant, unsupported by direct testimony as to when it was written or received, was held to contain internal evidence that it was written while the contract of service was in force and unbroken, and to be in substance pertinent to the issue.

There having been evidence that a course of persuasion had been entered upon, evidence of opportunity to persuade was admissible.

CASE for enticing away the plaintiff's servant. Plea, the general issue. Trial by jury at the March Term, 1896, Rutland County, *Taft*, J., presiding. Verdict directed, and judgment thereon rendered, for the defendant. The plaintiff excepted.

On July 30, 1890, a contract was made between the plaintiff and Lucy Wells that she should keep the plaintiff's house and look after his children so long as they should need a home there and that the plaintiff should treat her kindly and discontinue certain law suits between them. She was not to begin until her parents ceased to need her care. Her father having died September 24, 1890, she entered upon her performance of the contract November 8, 1890, and continued thereunder until about May, 1, 1891, when she left the plaintiff's service without his consent.

The defendant testified that he found the letter recited below upon a stand in Miss Wells' room during her stay at his house; that it was in the defendant's handwriting, and that the copy produced was made by him and is correct; that many letters passed between the defendant and Miss Wells while she was at his house; that there was an envelope with the letter in question which was new in appearance,

but that he did not copy it and could not remember its
date. The plaintiff produced no other testimony as to the
time when the letter was written or received.

The letter read as follows:

"HOME, Sabbath P. M.

*My Dear Sister:—*

Having a postal to send you thought you would pardon
me if I should add a few lines. I am lonely today and
should be so happy if you were here to chat with me. Since
I wrote you I have taken a very short vacation. Left home
Thursday at 3.40 for Holyoke, Mass., stopped over night
with cousins in North Adams. Next day went on to
Holyoke and returned last eve. I had as pleasant a time as
one would naturally have all alone. Bought quite a bill of
stationery. Saw Mr. Dr. Hemner a few moments. Weather
was terrible hot and some rain. Tuesday has been more
comfortable. My dear sister, it does seem so strange to
have you away from here and ·Castleton too. It grows
more lonely each day. It seems some times as if I never was
to see you again. Saw Judge Bromley on the train last eve.,
says he heard from pretty good source that Prof. Leaven-
worth and Miss Wardsworth were to be married before
school opened. This is all a secret. What do you think
about it, wouldn't we have some talking to do if ————
was to carry you to Castleton tonight?

Must not write more now. Wish you could see my sweet
peas; they are just immense. Wish I could pick you some
tonight. Lucy, I wish you could have heard Mr. B. last
night. It seemed just the thing for you. Of course we
always find some one else for the coat to fit. He said rash
promises were far better broken than kept. I do so wish
you were back at Castleton. You cannot think how strange
it seems to me coming through there one week ago Sunday
eve., to think I could perhaps never stop there as I have so
many times and receive your pleasant welcome. I think you
had better come back. I mean just what I say and I am

sure unless you feel different from what I think you do that it is your solemn duty to come. Wouldn't we all try to be happy once more? You do not know how much I miss you. But I must not say so, must I? Would send you some sweet peas if it would do. We have lots of them and they do look so fine from my window where I am writing. But I must close. I will only add, that if you do not like Mr. Forbes I think it very unkind in him to ask you to leave your school and sacrifice so much for him. Love to Herbert and much for yourself, from

BROTHER FRANK."

The court ruled that there was no evidence tending to show that the letter was written or received between July 30, 1890, when the contract was made, and the May following, when Miss Wells left the plaintiff's service, and excluded the letter; to which the plaintiff excepted.

The court also excluded, against the plaintiff's exception, the deposition of B. G. Howe, the substance of which is stated in the opinion.

Miss Wells and a deceased wife of the plaintiff and a deceased wife of the defendant, were sisters. The defendant was married to Miss Wells in May, 1892.

*Horace W. Love* for the plaintiff.

*Henry A. Harman* and *George E. Lawrence* for the defendant.

MUNSON, J. On the thirtieth day of July, 1890, Lucy Wells contracted with the plaintiff to become his house-keeper upon the happening of a certain contingency. She entered the plaintiff's service under this contract on the eighth day of November, 1890, and remained in it until the first of May, 1891. The plaintiff claims that she was enticed from his service by the defendant.

The plaintiff offered evidence of the contents of an undated letter in the defendant's handwriting, which was found on a stand in Miss Wells' room during her stay at the plaintiff's,

having with it an envelope which had the appearance of being new. The court excluded this evidence on the ground that there was no testimony tending to show that the letter was written after the thirtieth of July, 1890, the date of Miss Wells' contract with the plaintiff.

It doubtless might have been held that there was no evidence tending to show that it was written after the eighth of November, the day Miss Wells entered upon her service; for the letter itself shows that it was written just after a period of extreme heat, and while the sweet peas visible from the writer's window were in full bloom. But a further consideration is necessary to determine whether there was evidence tending to show that it was written after July thirtieth, the date of the contract.

The whole burden of the letter is the writer's regret for Miss Wells' absence, and for the prospect of her continued absence, from Castleton, where she had been teaching. The last sentence connects the plaintiff by name with the subject-matter of the writer's regret. "If you do not like Mr. Forbes, I think it very unkind in him to ask you to leave your school and sacrifice so much for him." If this stood alone, it might seem to point to some proposition made, rather than to an arrangement actually entered into. But the writer had just before expressed his regret that she had not heard the recent remark of another, that "rash promises were far better broken than kept," saying, "it seemed just the thing for you." When the two are taken together they seem to refer to something which Miss Wells has agreed to do for the plaintiff which is inconsistent with the continuance of her work as a teacher. It must therefore be held that the letter itself affords evidence that it was written after the contract above referred to was made.

It is also apparent from this examination of the letter that it contained matters pertinent to the issue. If it had been admitted, there would have been evidence tending to show that the defendant had endeavored to persuade Miss

Wells to deprive the plaintiff of a service which he knew she had contracted to render; and this, with the proof of her leaving, would have made a case for the jury; unless a different disposition was required by the fact that she entered upon the service notwithstanding the letter.

It may be objected that if the letter was written before the eighth of November it was written to prevent Miss Wells from entering upon the service contracted for, and failed of its purpose; and that if reperusals of it after the service was entered upon induced her to leave, that was an effect not designed by the writer, and one for which he would not be liable. It would seem, however, that if the language complained of was calculated to induce her to break the contract without reference to time or circumstance, it would make no difference whether it led her to do this by refusing to commence the service, or by leaving it after it was commenced. It is doubtless true that language might have been used for which the defendant could not have been made liable by reason of an abandonment of the service after it had been entered upon. But it will be noticed that the language used was general, and not suggestive of a breach in any particular manner; and, in view of its scope, we think the question of liability cannot be disposed of as a matter of law on the ground indicated.

With the letter in the case, the deposition showing that Miss Wells and the defendant met at a hotel in St. Johnsbury on the seventeenth of October, 1890, and passed the evening together, would be admissible. Perhaps its only tendency is to show opportunity, but when there is evidence that a course of persuasion has been entered upon, evidence of opportunity is admissible.

*Judgment reversed and cause remanded.*